**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Anyang Railway Equipment Co. Ltd., a Chinese company, directly and derivatively on behalf of Yangtze Railroad Fasteners International, U.S.A., Inc, a.k.a. Yangtze Railroad Materials, Inc., a Maryland Corporation<br><br>Plaintiff,<br><br>v.<br><br>Patrick Young and Yangtze Railroad Fasteners International, U.S.A., Inc., a.k.a. Yangtze Railroad Materials, Inc.,<br><br>Defendants. | Civil Action No. 1:26-cv-00005-ABA<br><br>VERIFIED AMENDED DERIVATIVE COMPLAINT |

## AMENDED COMPLAINT

Plaintiff, Anyang Railway Equipment Co. Ltd. ("Anyang" or "Plaintiff"), brings this action directly on behalf of itself and derivatively on behalf of Yangtze Railroad Fasteners International, U.S.A., Inc, a.k.a. Yangtze Railroad Materials, Inc. ("Yangtze" or the "Company") against defendant Patrick Young ("Young") and the Company directly (collectively, "Defendants"). Plaintiff alleges as follows:

## NATURE OF THE CASE

1. This action arises from majority shareholder Young's systematic oppression of Anyang, the Company's 49% minority shareholder, and his persistent abuse of control over the Company for personal enrichment. As the Company's 51% majority shareholder, President, sole director and controller, Young has operated the Company as his personal enterprise, excluding Plaintiff from meaningful participation in management, attempting to squeeze Plaintiff out of the Company, and diverting corporate resources for his and his family's benefit. Young's conduct

11990519.v3

constitutes classic minority shareholder oppression and a breach of the fiduciary duties of loyalty, good faith, and fair dealing that he owed to Plaintiff as a minority shareholder.

2.      Manipulating the Company for his personal gain at the expense of Anyang, Young has engaged in repeated self-dealing, misuse and dissipation of the Company's assets. Young has used Company funds to underwrite his lavish personal lifestyle, including purchasing multiple luxury vehicles for Young and his family's personal use, paying himself nearly $1 million in annual compensation without any legitimate business justification, and paying his wife—who served nominally as the Company's accountant—a grossly excessive salary disproportionate to her job responsibilities. In addition, the Company has breached its direct obligations to Anyang.

3.      Plaintiff brings this action to redress Young's oppression and breaches of fiduciary duty owed to Plaintiff as a minority shareholder of a Maryland close corporation and derivatively on behalf of the Company to recover damages caused by Young's breach of fiduciary duties, corporate waste, and unjust enrichment. Plaintiff also sues the Company directly for breach of its direct obligations to Anyang, as alleged herein.  Plaintiff seeks damages, restitution, and equitable relief to remedy Young's misconduct.

**PARTIES AND JURISDICTION**

4.      Plaintiff Anyang is a Chinese Company with its principal place of business located in Anyang, China. It is one of two sole shareholders of the Company, holding its 49% of the outstanding equity of the Company.

5.      Defendant Young is an adult citizen of the State of Maryland. He is also the founder of the Company and its majority shareholder with 51% of the outstanding equity of the Company.

6.      Defendant Yangtze is a Maryland corporation with a principal place of business at 500 North Point Rd., Rosedale, Maryland. With only two shareholders, Yangtze qualifies as a close

11990519.v3

corporation under the Maryland Corporations and Associations Act, Section 4-101 *et. seq.* (the "Close Corporation Act").

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because of the complete diversity of citizenship of the parties and an amount in controversy in excess of $75,000.

8. This Court has personal jurisdiction over Defendants because they are domiciled in the State of Maryland.

### FACTUAL ALLEGATIONS

**A.    Anyang Invested in the Company**

9. Yangtze is a railway accessory distributing company incorporated in Maryland in 1995.

10. Anyang is a leading railway accessory manufacturing company located in Anyang, China. It provides a wide range of railway products to various distributors in the United Sates and internationally.

11. Anyang and Yangtze have been in a manufacturer-purchaser relationship for many years. Under this relationship, Anyang would sell goods to Yangtze, which Yangtze resold in the United States.

12. Anyang fulfills orders for goods placed by Yangtze from its manufacturing facilities in China, which are then shipped from China to Yangtze in the United States. Anyang has no offices in the State of Maryland, and it does not regularly initiate business transactions from Maryland. No employees of Anyang are stationed in Maryland.

13. In 2015, during a period when Yangtze was in serious financial distress, Young invited Anyang to invest in the Company.

14.     On May 13, 2015, Anyang entered into a Common Stock Purchase Agreement[1] with Yangtze (the "SPA"), purchasing 49% of the common shares of the Company for a purchase price of $4,410,000. Anyang and Young are the sole shareholders of the Company, with Young owning 51% of common shares, Anyang owning 49%. A true and correct copy of the SPA is attached hereto as Exhibit 1.

15.     Also on May 13, 2015, in consideration of Anyang's investment in the Company, Anyang and Yangtze executed a Shareholders Agreement which governs the affairs of the Company (the "Shareholders Agreement"). [2] A true and correct copy of the Shareholders Agreement is attached hereto as Exhibit 2.

16.     Yangtze is a close corporation within the meaning of the Close Corporation Act because the Shareholders Agreement is a unanimous shareholders agreement that designates the Company as a close corporation under the Act. *See* Shareholders Agreement § 2.5, Definitions at 1; Md. Code Ann., Corps. & Ass'ns § 4-101.

17.     Since its investment, Anyang continues to supply high-quality railway products to the Company. Anyang's investment and support have helped the Company substantially grow its distribution business.  This growth would not have been possible without Anyang's support.

---

[1] In the Common Stock Purchase Agreement and the Shareholders Agreement, Anyang is referred as Anyang City Railway Products Co. Ltd., due to a slight difference in translation from Chinese into English.

[2] Schedule A, attached to the Shareholders Agreement, mistakenly lists Zhongyan Guo, the Legal Representative of Anyang, as the shareholder. This designation was made in error. The Common Stock Purchase Agreement and the Shareholders Agreement were entered into between Anyang and Yangtze. Ex. 1 at 1; Ex. 2 at 1. Mr. Guo executed both the SPA and the Shareholders Agreement solely in his capacity as the Legal Representative of Anyang, and not in any personal capacity. Ex. 1 at 16; Ex. 2, at 29.

11990519.v3

**B.    Young Oppressively Excludes Anyang from the Management and Decision-Making of the Company**

18.    At all times since the execution of the Shareholders Agreement, Young has controlled the affairs of Yangtze as its sole officer and director.

19.    As a 49% shareholder of a close corporation, Anyang was entitled to participate in the management, oversight, and governance of the Company.

20.    In practice, however, Yangtze failed to observe even minimal corporate governance formalities. The Company did not — and does not — have a functioning Board of Directors.

21.    Section 4.1 of the Shareholders Agreement provides:

> The Corporation shall have a Board consisting of up to three (3) directors, of which: (a) One director shall be nominated by the Founders (the "Founder Nominee"), who shall initially be Patrick Young; (b) One director shall be nominated by the holders of the Class A Preferred Shares (the "Investor Nominee"), who shall initially be ___; (c) One director shall be nominated by the holders of the Common Shares (the "Common Nominee") and be acceptable to the Corporation, the Investor Nominee, and the Founders, who shall initially be ___.
>
> Each Shareholder shall vote its Shares at any meeting at which directors are to be elected, or execute any written resolutions of the shareholders at the request of the corporation, to elect the directors nominated in accordance with this Agreement.

Shareholders Agreement, § 4.1.

22.    Except for Young, no other director has been appointed to the Company's Board. Upon information and belief, no Class A Preferred Shares were ever issued by the Company, so no director was ever appointed under section 4.1(b) of the Shareholders Agreement.

23.    In addition, the Company has never appointed a Board member under Section 4.1(c) through a vote of the holders of its common stock under section 4.1(c) of the Shareholders Agreement.

24.    Upon information and belief, the Company has never held a shareholder meeting to elect directors as required by the Shareholders Agreement.

11990519.v3

25.     Upon information and belief, the Company maintains no records of any nomination, election, or appointment of directors because no such actions ever occurred.

26.     As one of the two sole shareholders, Anyang was entitled to participate fully in the governance process—which Young intentionally prevented.

27.     Contrary to Anyang's reasonable expectations and rights, Young, acting as the majority shareholder, President, and sole director and controller of the Company, deliberately failed to hold shareholder meetings for the nomination and election of directors, thereby preventing the formation of a functioning Board of Directors and consolidating all corporate authority in himself.

28.     Young has systematically, deliberately, and oppressively excluded Anyang from all managerial participation and decision-making and has instead operated the Company solely for his personal benefit and that of his family, to the detriment of Anyang.

29.     Acting as such capacities, Young has exercised complete and unilateral control over the Company's business and affairs, including, but not limited to, directing operations; determining all significant business and financial decisions; hiring and firing employees; and setting all employee compensation, including his own excessive compensation. Anyang has been wholly excluded from these decisions.

30.     For example, no board resolutions or shareholder votes were ever taken regarding Young's compensation. In 2023, without a functioning Board or shareholders' approval or oversight, Young unilaterally doubled his own salary to $982,244.

31.     Young also obstructed Anyang's access to Company operations and information. When Anyang's Legal Representative visited the Company, Young instructed Company employees

6

11990519.v3

to withhold all information and communications from the representative and threatened adverse consequences for any employee who failed to comply.

32. Young further engaged in oppressive conduct by repeatedly refusing to provide Anyang with access to the Company's financial records, tax returns, and other material information for the period 2023–2025, despite Anyang's statutory rights as a shareholder.

33. Young also made unreasonable and self-serving demands of Anyang and escalated his oppressive conduct when those demands were rejected. For example, in August 2024, Young demanded that Anyang sell railway products exclusively to the Company in the United States, despite knowing that Anyang had sold products to numerous other businesses in the United States for more than a decade and that the Shareholders Agreement imposed no such exclusivity requirement.

34. When Anyang refused Young's unreasonable demand, Young retaliated by using that refusal as a pretext to insist that Anyang withdraw as a shareholder and by offering a grossly undervalued and unfair buyout price.

35. From March 2025 through December 2025, Anyang repeatedly demanded that Young provide the Company's financial statements. Young willfully ignored and refused these demands, deliberately withholding financial information.

36. Young also refused to declare dividends for 2024 despite Anyang's repeated requests and likely intends to refuse to declare dividends for the Company's current 2025 fiscal year. Between 2015 and 2023, Yangtze distributed dividends to its shareholders every year except in 2018-2020 due to exigent circumstances that are no longer applicable.

11990519.v3

37.     Through this course of conduct, Young has engaged in a calculated and sustained effort to oppress, freeze out, and force out Anyang as the minority shareholder, in breach of his fiduciary duties as a majority shareholder, officer, and director of a Maryland close corporation.

38.     Because Young exercises complete control over the Company and the Company lacks a functioning and independent Board of Directors, any demand that the Company pursue claims against Young would be futile.

**C.     Young Breached the Fiduciary Duties He Owes to Anyang and the Company**

39.     Young has engaged in a pattern and scheme to misuse Company assets and resources for his personal benefit and that of his family members. The Company typically employs only five to ten individuals, three of whom are members of Young's own family—Young serving as President, his wife as accountant, and his daughter as office administrator. All of Young's family members are paid excessive salaries and benefits that are not supported by any reasonable business purpose other than enriching Young's family at the expense of the Company.

40.     Despite the Company's modest scale, Young also engaged in repeated acts of corporate waste, self-dealing, and gross mismanagement by causing the Company to purchase, maintain, and insure multiple high-end luxury vehicles for the personal use and enjoyment of himself and his family. These expenditures served no legitimate corporate purpose and were made solely for Young's personal benefit at the expense of the Company and Anyang as its only other shareholder.

41.     By way of illustration, and without limitation, Young has engaged in prolific overspending by the Company for his own benefit, and to the detriment of Anyang, including:

(1)     Causing the Company to purchase a Mercedes-Benz GL550 at a cost of $94,999.08.

(2)     Causing the Company to acquire another Mercedes-Benz GL550 for $112,111.

8

(3)     Selling another company vehicle to a personal acquaintance of his wife at a grossly inadequate price.

(4)     Causing the Company to purchase a 2024 Mercedes-Maybach for approximately $300,000.

42.     Such disproportionate and excessive expenditures reflect Young's blatant disregard for the Company's financial interests and the interests of Anyang, its only other shareholder, and constitute a misuse and diversion of corporate assets for personal enrichment. Young and his family were the sole beneficiaries of these expenditures, resulting in additional waste and loss to the Company and Anyang as the Company's only other shareholder.

43.     Young further engaged in acts of self-dealing and corporate waste by causing the Company to pay himself grossly excessive compensation, disproportionately high relative to the number of employees, annual sales, taxable income, and total payroll of the Company, and national mean compensation for Chief Executives.[3]

44.     In 2022, Young caused the Company to pay himself $476,923 in compensation—an amount nearly equal to the aggregate wages paid to all other employees combined ($489,069). In 2023, despite no material increase in the Company's revenues, profitability, or management workload, Young unilaterally doubled his own pay to $982,244, a 106% year-over-year increase.

45.     In contrast, publicly available data from the U.S. Bureau of Labor Statistics (Occupational Employment and Wage Statistics) reflect that, as of May 2023, the annual mean compensation for Chief Executives in the District of Columbia–Virginia–Maryland–West Virginia region was approximately $323,200, and the nationwide median wage for Chief Executives was $206,680. Even within the five highest-paying industries nationally, the mean annual

---

[3]   *See* Reasonable Compensation – Job Aid for IRS Valuation Professional. https://www.irs.gov/businesses/valuation-of-assets

9

compensation for Chief Executives ranged only from approximately $443,900 to $735,020—figures far below the excessive compensation that Young awarded himself.[4]

46.    This self-approved salary increase, made without independent review or consultation with Anyang, constituted a flagrant breach of Young's fiduciary duties owed to the Company and Anyang.

47.    Young also caused the Company to pay his wife, who served as the Company's accountant and who has no professional license or certificate for accounting work, an excessive and unjustified salary of $250,000 in 2023, an amount several times greater than prevailing market compensation for comparable accounting positions in similarly sized firms. For example, publicly available data from the U.S. Bureau of Labor Statistics (Occupational Employment and Wage Statistics) reflect that, as of May 2023, the annual mean compensation for Accountants and Auditors in the District of Columbia–Virginia–Maryland–West Virginia region was approximately $104,850. Even within the five highest-paying industries nationally, the mean annual compensation for accountants ranged only from approximately $118,090 to $133,140—figures far below the excessive compensation that Young awarded to his wife.[5]

48.    Upon information and belief, these are only limited examples of Young's blatant self-dealing.  Anyang has requested – and is entitled to – an accounting of all Company expenses that were paid solely for Young's personal benefit.

49.    All of Young's above-referenced actions and decisions—undertaken without informing, consulting, or obtaining Anyang's consent—constitute acts of self-dealing and breaches of his fiduciary duty of loyalty owed to the Company and to Anyang as a shareholder.

---

[4] *See* https://www.bls.gov/oes/2023/may/oes111011.htm#(8).

[5] *See* https://www.bls.gov/oes/2023/may/oes132011.htm.

11990519.v3

**D.       The Company Breached its Contracts**

50.      On November 12, 2018, Yangtze agreed to pay an annual payment of $120,000 to Anyang's Legal Representative, beginning in 2018 and continuing each year thereafter, as compensation for China-related procurement services that the Legal Representative personally provided to the Company.

51.      The Legal Representative has provided procurement services to the Company, but the Company has continually failed to perform its ongoing obligations to Anyang's Legal Representative.

52.       As a result, $360,000 is due and owing for the Legal Representative's services for the years 2023 through 2025.

53.      Anyang's Legal Representative has assigned all of his right, title, and interest to such payments to Anyang.

54.      Additionally, on July 20, 2023, the Company agreed to pay a Chinese export company, Anhui Technology Import & Export Co. Ltd. (the "Export Company"), an outstanding invoice totaling $392, 784.00 for Anyang's railway products sold through that entity.

55.      On November 22, 2023, Yangtze paid $250,000 toward the invoice, leaving a remaining balance of $142,784.

56.      The Company nevertheless failed to pay the remaining balance. The Export Company has assigned to Anyang all of its claims against Yangtze arising from this breach of contract.

**DERIVATIVE ALLEGATIONS AND DEMAND FUTILITY**

57.      Plaintiff brings the derivative claims on behalf of the Company to redress the harm that the Company has suffered—and continues to suffer—as a direct result of Young's misconduct complained herein.

11

11990519.v3

58.     Plaintiff Anyang is one of the two shareholders of the Company and has continuously held its ownership interests during all relevant times alleged herein.

59.     Plaintiff will fairly and adequately represent the interests of the Company and its shareholders in enforcing the Company's rights.

60.     This derivative action is not a collusive one to confer jurisdiction that this Court would otherwise lack.

61.     The Company is a close corporation under the Close Corporation Act. Although the Shareholders Agreement contemplates a Board of Directors, the Company has never established a functioning Board.

62.     As described above, except for Young himself, no other directors have ever been properly nominated or elected pursuant to the Shareholders Agreement, no shareholder meetings have been held to vote for or elect directors, and the Company maintains no corporate records reflecting the appointment or election of any other directors.

63.     As a result, the Company currently has no functioning or independent Board of Directors capable of considering or responding to a shareholder demand to initiate litigation on behalf of the Company.

64.     Instead, Defendant Young has unilaterally assumed and exercised complete control over the Company's governance and operations, acting as the Company's President, majority shareholder, sole director and controller.

65.     Young exercises complete and exclusive authority over the Company's business and affairs, including its financial decisions, employee compensation, access to corporate information, and the Company's responses to shareholder requests.

11990519.v3

66.     The wrongful conduct challenged in this action—including Young's self-dealing compensation decisions, corporate waste, breach of fiduciary duty—was undertaken and directed by Young himself.

67.     Because Young is the principal wrongdoer responsible for the misconduct alleged herein, he is directly interested in the challenged transactions and cannot be considered disinterested with respect to any demand that the Company pursue claims against him.

68.     Moreover, because Young, as the majority shareholder, President, sole director, and controller, exercises complete control over the Company and there is no functioning Board of Directors capable of exercising independent judgment, any demand that the Company initiate litigation against Young would necessarily be considered, if at all, only by Young, who is hopelessly conflicted to consider such a demand.

69.     Under these circumstances, requiring Plaintiff to demand that Young authorize the Company to sue himself for his own misconduct would be futile and meaningless.

70.     Accordingly, any demand on the Company to initiate this action would be futile, and is therefore excused as a matter of law.

## COUNT I
**Oppression of Minority Shareholder**
**(Plaintiff v. Young, Direct Claim)**

71.     Plaintiff incorporates and realleges each of the foregoing allegations as if fully set forth herein. Plaintiff incorporates and realleges each of the foregoing allegations as if fully set forth herein.

72.     The Company is a close corporation under the Close Corporation Act. The Company has only two shareholders: Anyang, which owns 49% of the Company's shares, and Young, who owns 51% of the Company's shares and exercises complete control over the Company.

13

73. At all relevant times, Young, as the majority shareholder, President, sole director and controller exercising exclusive control over the Company, owed fiduciary duties of care, loyalty, and good faith to Anyang. Those duties required Young to act fairly and in the best interests of the Company and all of its shareholders and prohibited him from using his control of the Company for his own personal benefit to the detriment of Anyang.

74. As one of two sole shareholders in a close corporation, Plaintiff reasonably expected to participate meaningfully in the management, oversight, and decision-making of the Company's business and affairs, directly or through nomination and election of Board of Directors.

75. Plaintiff's reasonable expectations included that, among other things:

    a. the Company would maintain a functioning Board of Directors;

    b. Plaintiff would participate in the nomination and election of directors and have representation in the Company's governance;

    c. major corporate decisions would be made through proper corporate procedures, including board approval or shareholder action where required;

    d. Plaintiff would have access to the Company's books and records;

    e. the Company would be operated for the benefit of all shareholders rather than for Young's and his family's personal benefit of ;

    f. the Company's profits would be shared fairly among the shareholders, including through dividends or other distributions; and

    g. the majority shareholder would act in good faith and with due regard for the rights and interests of the minority shareholder.

76. Contrary to these reasonable expectations, Young, acting as the majority shareholder, President, sole director and controller of the Company, deliberately failed to convene shareholder meetings for the nomination and election of directors, thereby preventing the formation of a functioning Board of Directors and consolidating all corporate authority in himself.

11990519.v3

77.    Young has exercised complete control over the Company and has excluded Plaintiff from participation in the management, governance, and oversight of the Company.

78.    Young has also denied Plaintiff, one of the two sole shareholders, access to corporate records and financial information.

79.    In addition, Young has used his control of the Company to engage in self-dealing transactions and to divert corporate assets and profits for his personal benefit and the benefit of his family members and to the disadvantage of Anyang.

80.    Young has also refused to declare Company dividends for 2024 and is likely also intends to withhold dividends for the Company's current 2025 fiscal year, despite the Company's established pattern and practice of declaring dividends and its sufficient available resources to continue doing so.

81.    Young has also attempted to pressure Plaintiff to relinquish its ownership interest through an unfair and substantially undervalued buyout proposal.

82.    Through this course of conduct, Young has effectively frozen Plaintiff out of the Company by depriving Plaintiff of both the governance rights and the economic benefits associated with its ownership interest. Young's conduct constitutes oppressive and unfairly prejudicial treatment of Plaintiff as a minority shareholder.

83.    As a direct and proximate result of Young's oppressive conduct, Plaintiff has suffered damages including the loss of the value and benefits of its investment in the Company.

## COUNT II
### Breach of Fiduciary Duty Owed to Plaintiff
### (Plaintiff v. Young, Direct Claim)

84.    Plaintiff incorporates and realleges each of the foregoing allegations as if fully set forth herein.

15

11990519.v3

85.     The Company is a close corporation under the Close Corporation Act without a functioning Board of Directors. Plaintiff is the minority shareholder owning 49% shares, and Young is the major shareholder owning 51% shares.

86.     At all relevant times, Young, as the majority shareholder, President, sole director and controller exercising exclusive control over the Company, owed fiduciary duties of care, loyalty, and good faith to Anyang. Those duties required Young to act fairly and in the best interests of the Company and all of its shareholders and prohibited him from using his control of the Company for his own personal benefit to the detriment of Anyang.

87.     Young breached these duties by engaging in conduct that directly harmed Plaintiff, including but not limited to:

   a.     deliberately failing to convene shareholder meetings for the nomination and election of directors, depriving Anyang's right to nominate and elect directors;

   b.     deliberately and oppressively excluding Plaintiff from meaningful participation in management and decision-making as well as access to corporate information;

   c.     marginalizing and squeezing out Anyang from the Company and offering a grossly unfair, substantially undervalued buyout price;

   d.     refusing to declare dividends for fiscal year 2024 and 2025 while paying himself excessive compensation.

88.     Young's conduct was self-dealing, undertaken to benefit himself and his family at the expense of Plaintiff's ownership and economic interests.

89.     As a direct and proximate result of Young's breaches, Plaintiff has suffered and continues to suffer damages, including loss of profits, diminution of the value of its investment, and exclusion from management opportunities.

16

11990519.v3

## COUNT III

### Breach of Fiduciary Duty Owed to the Company
### (Plaintiff v. Young, Derivative Claim)

90.    Plaintiff incorporates and realleges each of the foregoing allegations as if fully set forth herein.

91.    The Company is a close corporation under the Close Corporation Act without a functioning Board of Directors. Plaintiff is the minority shareholder owning 49% shares, and Young is the major shareholder owning 51% shares.

92.    At all relevant times, as the majority shareholder, President, sole director and controller with exclusive control over the Company, Young owed fiduciary duties, including duties of care, loyalty, and good faith, to the Company.

93.    Young breached these duties by engaging in conduct that directly harmed the Company, including but not limited to:

   a.    paying himself excessive compensation, disproportionate to his services, the Company's size and profit, and prevailing market compensation for comparable Chief Executive positions in similarly sized firms;

   b.    paying his family members excessive compensation, disproportionate to their services, the Company's size and profit, and prevailing market compensation for comparable accounting positions in similarly sized firms;

   c.    causing the Company to purchase and maintain multiple luxury vehicles for Young's and his family's personal use; and

   d.    selling Company vehicles to friends at prices substantially below market value and misappropriating a portion of the proceeds.

94.    As a direct and proximate result of Young's breach of fiduciary duties, the Company has suffered significant financial loss, including the dissipation of corporate funds and reduction in the value of its assets.

17

11990519.v3

95.     Plaintiff brings this claim derivatively on behalf of the Company and seeks judgment in favor of the Company for all damages sustained as a result of Young's breach of fiduciary duties.

## COUNT IV
### Corporate Waste
### (Plaintiff v. Young, Derivative Claim)

96.     Plaintiff incorporates and realleges each of the foregoing allegations as if fully set forth herein.

97.     The Company is a close corporation under the Close Corporation Act without a functioning Board of Directors. Plaintiff is the minority shareholder owning 49% shares, and Young is the major shareholder owning 51% shares.

98.     As the majority shareholder, President, sole director and controller with exclusive control over the Company, Young owed the Company fiduciary duties, including duties of care and duties of loyalty, and good faith, to the Company.

99.     Young has committed corporate waste by expending substantial corporate funds and resources for purposes that conferred no commensurate or legitimate benefit on the Company, including but not limited to:

    a.    paying himself excessive compensation, disproportionate to his services, the Company's size and profit, and prevailing market compensation for comparable Chief Executive positions in similarly sized firms;

    b.    paying his family member excessive compensation, disproportionate to their services, the Company's size and profit, and prevailing market compensation for comparable accounting positions in similarly sized firms;

    c.    causing the Company to purchase and maintain multiple luxury vehicles for Young's and his family's personal use; and

    d.    selling Company vehicles to friends at prices substantially below market value and misappropriating a portion of the proceeds.

11990519.v3

100.    Young's conduct constituted waste of corporate assets and was undertaken for his personal advantage and that of his family members.

101.    As a direct and proximate result of Young's acts of corporate waste, the Company has suffered significant financial loss, including the dissipation of corporate funds and reduction in the value of its assets.

102.    Plaintiff brings this claim derivatively on behalf of the Company and seeks judgment in favor of the Company for all damages sustained as a result of Young's acts of corporate waste.

**COUNT V**
**Unjust Enrichment**
**(Plaintiff v. Young, Derivative Claim)**

103.    Plaintiff incorporates and realleges each of the foregoing allegations as if fully set forth herein.

104.    The Company is a close corporation under the Close Corporation Act without a functioning Board of Directors. Plaintiff is the minority shareholder owning 49% shares, and Young is the major shareholder owning 51% shares.

105.    At all relevant times, Young exercised complete control over the Company's management, finances, and operations, and used that control to divert Company assets for his own personal benefit and for the benefit of his family members.

106.    Specifically, Young and his family members personally benefited from the use of Company funds and assets, including but not limited to:

    a.    paying himself excessive compensation, disproportionate to his services, the Company's size and profit, and prevailing market compensation for comparable Chief Executive positions in similarly sized firms;

    b.    paying his family members excessive compensation, disproportionate to their services, the Company's size and profit, and prevailing market compensation for comparable accounting positions in similarly sized firms;

19

   c. causing the Company to purchase and maintain multiple luxury vehicles for Young's and his family's personal use.

107. Young's receipt of these benefits was without justification, and Young and his family members were unjustly enriched at the expense of the Company.

108. Equity and good conscience require that Young disgorge all benefits and value obtained through his misuse and diversion of Company assets and reimburse the Company for the losses sustained as a result of his unjust enrichment.

109. Plaintiff brings this claim derivatively on behalf of the Company, and seeks judgment in favor of the Company requiring Young to disgorge and return all sums and benefits wrongfully obtained, together with interest, and for such other and further relief as the Court deems just and proper.

**COUNT VI**
**Breach of Contract**
**(Plaintiff v. Yangtze, Direct Claim)**

110. Plaintiff incorporates and realleges each of the foregoing allegations as if fully set forth herein.

111. Beginning in 2018, the Company had a contractual obligation to pay $120,000 annually to Anyang's Legal Representative as compensation for China-related procurement services that the Legal Representative personally provided to the Company.

112. The Legal Representative has fully performed his contractual obligations, but the Company has failed to perform its payment obligations.

113. As a result, $360,000 is due and owing for the Legal Representative's services for the years 2023 through 2025.

114. The Legal Representative has assigned all of his right, title, and interest in such payments to Anyang.

11990519.v3

115.    As a result of the foregoing breach, Anyang is entitled to judgment against the Company in the amount of $360,000 for the years 2023 through 2025, together with such other relief as the Court deems just and proper.

## COUNT VII
**Breach of Contract**
**(Plaintiff v. Yangtze, Direct Claim)**

116.    Plaintiff incorporates and realleges each of the foregoing allegations as if fully set forth herein.

117.    The Export Company sold Anyang's railway products to the Company for resale in the United States.

118.    In connection with those transactions, the Company became obligated to pay the purchase price for the products supplied, including the remaining balance of $142,784.00.

119.    The Company has failed and refused to pay the outstanding balance.

120.    The Export Company has assigned to Plaintiff Anyang all of its rights, title, and interest in and to the Company's right to payment of the outstanding balance.

121.     By failing to pay the amount due for products sold and delivered, the Company has breached its contractual obligation to pay for those goods.

122.    As a direct and proximate result of the Company's breach, Plaintiff has suffered damages in the amount of $142,784.00, plus interest and any other relief permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, and grant the following relief:

A.    Judgement requiring Young to account for and disgorge all funds misappropriated from the Company;

11990519.v3

B.      Judgment requiring Young to reimburse or restore to the Company all Company assets diverted for Young's personal use or for the benefit of his family members;

C.      An accounting of the Company's financial records and Young's use of Company assets from the date of Plaintiff's investment to the present;

D.      An order compelling a fair buyout of Plaintiff's shares in the Company at their fair market value, as determined by an independent valuation. or, alternatively, an injunction prohibiting Young from excluding Plaintiff from co-management and decision making of the Company's business and affairs;

E.      Damages against Yangtze for breach of its obligations to Anyang in an amount not less than $502,784.

F.      An award of other compensatory damages to Plaintiff in an amount to be proven at trial;

G.      An award of Plaintiff's costs and reasonable attorneys' fees incurred in this action;

H.      An award of any pre-judgment and post-judgment interest; and

I.      Such other and further relief as the Court deems just and proper.

Dated: March 12, 2026                        Respectfully submitted,

                                             **KLEHR HARRISON**
                                             **HARVEY BRANZBURG LLP**

                                             */s/Caixia Su*
                                             Caixia Su (Bar ID: 31290)
                                             919 N. Market Street, Suite 1000
                                             Wilmington, DE 19801
                                             (302) 552-5518
                                             Fax: 302-426-9193
                                             csu@klehr.com

                                             AND

11990519.v3

Richard M. Beck
(*pro hac vice* forthcoming)
919 N. Market Street, Suite 1000
Wilmington, DE 19801
(302) 552-5501
Fax: 302-426-9193
rbeck@klehr.com

*Attorneys for Plaintiff*

23

11990519.v3